IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL GIBSON,                                :

       Plaintiff,

      v.                                        :      Case No. 3:16-cv-48

MECHANICSBURG POLICE                           :      JUDGE WALTER H. RICE
DEPARTMENT, *et al.*,

      Defendants.                                :

---

DECISION AND ENTRY OVERRULING PLAINTIFF MICHAEL GIBSON'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ON HIS CLAIM THAT
DEFENDANT FAILED TO GIVE HIM DUE PROCESS (DOC. #19);
OVERRULING AS MOOT PLAINTIFF'S MOTION FOR SANCTIONS RE:
SPOLIATION OF EVIDENCE (DOC. #20); SUSTAINING MOTION FOR
SUMMARY JUDGMENT AS TO ALL CLAIMS AGAINST DEFENDANTS
MECHANICSBURG POLICE DEPARTMENT AND VILLAGE OF
MECHANICSBURG (DOC. #21); DISMISSING COUNTS I AND III WITH
PREJUDICE; DISMISSING COUNT II WITHOUT PREJUDICE;
OVERRULING AS MOOT DEFENDANTS MECHANICSBURG POLICE
DEPARTMENT AND VILLAGE OF MECHANICSBURG'S MOTION IN
LIMINE (DOC. #26); JUDGMENT TO ENTER IN FAVOR OF
DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

Following termination from his position as a police officer, Plaintiff Michael

Gibson filed suit against the Mechanicsburg Police Department and the Village of

Mechanicsburg, alleging disability discrimination in violation of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and/or the Rehabilitation Act

of 1973, 29 U.S.C. § 794, and Ohio Revised Code Chapter 4112, and, in addition,

denial of his federal and state due process rights.

This matter is currently before the Court on four motions: (1) Plaintiff's Motion for Partial Summary Judgment on his Due Process Claims, Doc. #19; (2) Plaintiff's Motion for Sanctions Re: Spoliation of Evidence, Doc. #20; (3) Defendants' Motion for Summary Judgment on all claims, Doc. #21; and (4) Defendants Mechanicsburg Police Department's and Village of Mechanicsburg's Motion in Limine, Doc. #26.

I.    **Background and Procedural History**

In 2000, Michael Gibson began working part-time as a police officer for the Village of Mechanicsburg. Around 2005, he was diagnosed with Type 2 diabetes. He checks his blood sugar up to three times a day, and controls his diabetes with diet, exercise and injectable insulin. Doc. #16-1, PageID#82-83. In 2013, he was hired by the Village on a full-time basis. *Id.* at PageID#70. Gibson typically worked the third shift, midnight until 8:00 a.m. *Id.* at PageID#72-73.

In January of 2014, John Alexander, previously a patrol officer for the Village, was appointed Police Chief. Gibson testified that Alexander had worked with him on many occasions, and knew that he was diabetic. *Id.* at PageID#79; Doc. #19-3, PageID#408. Alexander, however, does not recall knowing that Gibson was a diabetic. Doc. #18-1, PageID#351.

Shortly after Alexander took over as Chief, he issued a policy, effective January 24, 2014, prohibiting officers from leaving the Village limits while they were on duty unless an enumerated exception applied. *Id.* at PageID#313;

2

Doc.#18-3, PageID#363. Alexander instituted the policy because he had heard from several citizens that Mechanicsburg police cruisers had been spotted outside the Village limits. Doc. #18-1, PageID#314. The Village had two police cruisers, but typically only one officer was on duty at a time. *Id.* at PageID##316-17. It was important that the officer on duty stay within the Village limits so that he or she could respond quickly to calls for assistance. *Id.* at PageID#316.

After Chief Alexander issued this new policy, Gibson told him that he might occasionally need to leave the Village limits to go home to get an insulin shot. Chief Alexander allegedly told him to "do what you've got to do." Gibson interpreted this statement to mean that, if he did leave the Village limits while on duty, he would probably be in trouble. Doc. #16-1, PageID#88-89. Alexander does not recall this conversation. Doc. #18-1, PageID#323-24.

Thereafter, Chief Alexander had a GPS device placed on Gibson's cruiser. Doc. #18-1, PageID#321. No officer other than Gibson was tracked, because Alexander had not received complaints about any other officer leaving the Village limits while on duty. *Id.* at PageID##322-23. According to the GPS device, Gibson left the Village limits without permission on February 6th, 11th, 12th, and 14th. *Id.* at PageID#321.

On February 18, 2014, Chief Alexander placed Gibson on paid administrative leave, and gave him a Notice of Predisciplinary Conference, scheduled for February 20, 2014. Doc. #16-1, PageID#92. That Notice read as follows:

<u>Alleged Offense</u>: Incompetence, gross neglect of duty, insubordination, failure to obey direct orders, and violation of the Village's Personnel Policy Manual.

<u>Summary of Charges</u>: On January 27, 2014 you were informed about the Village Policy prohibiting officers from leaving the Village jurisdiction while on duty. On February 6, 11, 12, and 14 of 2014 you left the Village in violation of policy and direct order. During several shifts you recklessly operated your vehicle at excessive speeds. You have falsified records through the submission of inaccurate daily logs. You were ordered to write-up an officer and failed to do so. You failed to attend a Mechanicsburg Police Department staff meeting as ordered. On or about January 11, 2014 you were responsible for transporting to the Tri-County Jail a prisoner who had been arrested for felonious assault. Before the Tri-County Officer could take possession of the prisoner you began uncuffing him. The Officer asked you to leave the cuffs on so he could do a proper pat-down. You replied, "if they want to play games I will play games" and the Officer was forced to transport the prisoner uncuffed into the booking area.

You have the right to (1) appear at the conference to present a statement or explanation for your actions; (2) appear at the conference with your chosen representative; or (3) elect in writing to waive your opportunity to have a predisciplinary conference by signing the attached form and returning it to the undersigned. Failure to respond or respond truthfully during the conference may result in disciplinary action.

At the conference you may present an explanation regarding the allegation(s) which explain whether or not the alleged misconduct occurred. You may be represented by any person you choose. No conference will be delayed more than 24 hours to enable your representative to attend.

A written report will be prepared by the person who conducts the conference concluding whether or not the alleged misconduct occurred. A copy of this report will be provided to you within five (5) workdays following its preparation if you so request.

Doc. #19-3, PageID#411.

Gibson appeared at the conference on February 20, 2014, and was questioned for approximately one hour by the Village's human resources consultant, Anthony Esposito. *Id.* at PageID#408.

That same day, at Gibson's request, the Village Administrator, April Huggins-Davis, sent Gibson a copy of Section 8.04 of the Village's Policy and Procedure Manual, setting forth grievance procedures, and a copy of the grievance form. *Id.* at PageID##409, 419. According to the instructions on the grievance form, Gibson had to file the form with his immediate supervisor within five working days of the incident giving rise to the grievance. If the grievance was denied, it could be appealed to the Mayor within five working days. If denied by the Mayor, it could be appealed to the Village Council within another five working days. *Id.* at PageID##420-21.

On February 21, 2014, Gibson was given another Notice of a Predisciplinary Conference to be held on February 24, 2014. *Id.* at PageID#413. This Notice raised additional allegations of misconduct:

> Alleged Offense: Incompetence, gross neglect of duty, and violation of the Village's Personnel Policy Manual.
>
> Summary of Charges: You have told at least two different Village employees that you drink alcohol and drive. On one particular occasion you stated that you could drink 18 beers and still be able to drive home.

*Id.* The Notice again informed Gibson of his right to appear, on his own or with a representative, to present an explanation for the allegations. *Id.*

Gibson appeared on February 24, 2014, and was questioned by Esposito for approximately 30 minutes. At the end of the hearing, Esposito offered Gibson an opportunity to resign. *Id.* at PageID#408. On February 25, 2014, Esposito submitted a report to Chief Alexander. He found that all allegations were substantiated, except for the allegation that Gibson had falsified daily activity logs. "Given the multitude and seriousness of the various acts of misconduct," Esposito recommended that Gibson's employment be terminated. *Id.* at PageID##414-18.

On Tuesday, February 25, 2014, Chief Alexander notified Gibson that he was recommending to Mayor Gregg Kimball that Gibson be terminated for insubordination, gross neglect of duty, incompetence, failure to obey direct orders, falsification of records, and violation of Village policies. Doc. #16-2, PageID#228. On February 26, 2014, Mayor Kimball officially terminated Gibson's employment. *Id.* at PageID#229. Gibson received Kimball's letter on February 27, 2014. Doc. #19-3, PageID#409.

On March 3, 2014, Gibson submitted a grievance form to Chief Alexander, challenging his termination. In an attached written statement, Gibson disputed several of Esposito's findings, and argued why he should not be discharged. Doc. #16-2, PageID##230-33. The same day, Gibson received notice that Chief Alexander and Mayor Kimball had both denied the grievance. *Id.* at PageID##230-31. On March 7, 2014, Gibson appealed the grievance to the Village Council. Doc. #19-3, PageID#410.

On March 18, 2014, the Village Solicitor sent Gibson a letter informing him that the Village Council had voted to deny the appeal as untimely. It explained that Ohio Revised Code § 737.19(B) required removal of a police officer to be appealed within 5 days from the date of the Mayor's decision. The Village deemed the Mayor's removal decision to have been rendered not on March 3, 2014, when the Mayor denied Gibson's *grievance*, but on February 27, 2014, when Gibson received Mayor Kimball's notice that he was terminated. Gibson's appeal was not filed until March 7, 2014, and was, therefore, untimely. *Id.* at PageID#425-26.

On April 30, 2014, Gibson filed a Charge of Discrimination with the Equal Employment Opportunities Commission ("EEOC"). *Id.* at PageID#410. On August 31, 2015, the EEOC issued a Right-to-Sue letter. Doc. #16-2, PageID#255.

On February 12, 2016, Gibson filed suit against the Mechanicsburg Police Department and the Village of Mechanicsburg. He alleged that Defendants violated the ADA and/or the Rehabilitation Act, and Ohio Revised Code Chapter 4112 by discriminating against him and discharging him because of his diabetes, and by refusing to reasonably accommodate his medical condition. He further alleged that Defendants violated his federal and state due process rights when they denied his appeal as untimely and refused to hold an evidentiary hearing, despite the fact that he fully complied with the Village's grievance procedures. Gibson requests back pay, reinstatement and/or front pay, plus attorney fees and costs. Doc. #1.

Gibson has moved for partial summary judgment on his due process claims, Doc. #19. Defendants have moved for summary judgment on all claims asserted

7

against them, Doc. #21. Gibson has also moved for sanctions based on Defendants' alleged spoliation of evidence, Doc. #20, and Defendants have filed a motion in limine, Doc. #26.

## II.   Summary Judgment Motions

### A.   Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need consider only the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S.

1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." *Id.* (citations omitted).

### B.    Proper Parties

Defendants argue that all claims against the Mechanicsburg Police Department must be dismissed because a police department is not *sui juris*; it is simply a sub-division of the municipality it serves. Gibson fails to respond to this argument. The Court agrees that all claims against the Mechanicsburg Police Department must be dismissed. *See Jones v. Marcum*, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002).

### C.    Due Process Claims (Count III)

Count III of Gibson's Complaint asserts violations of the Due Process Clauses of the Constitutions of the United States and the State of Ohio. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

U.S. Const. amend. XIV. Ohio's Constitution provides that "every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law." Ohio Const., Art. I, §16.

The Court presumes that Gibson is seeking relief under 42 U.S.C. § 1983 for the alleged federal due process violation, although the Complaint is silent on this issue. Gibson has no private right of action for alleged violations of the Ohio Constitution, however. *See Harris v. Columbus*, 10th Dist. No. 15AP-792, 2016-Ohio-1036, at ¶24; *PDU, Inc. v. City of Cleveland*, 8th Dist. No. 81944, 2003-Ohio-3671, at ¶27. For those alleged violations of the Ohio Constitution, he has failed to state a claim upon which relief can be granted.

In order to succeed on his § 1983 claim against the Village, Gibson must prove that the procedures employed in connection with his termination violated his Fourteenth Amendment procedural due process rights. *See, e.g., Owen v. City of Independence*, 445 U.S. 622 (1980) (holding that municipal liability may be imposed for a decision by a municipality's legislative body).

More specifically, he must show that: (1) he has a protected property interest in continued employment; and (2) he was deprived of this interest without due process of law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Given that Ohio Revised Code § 737.19(B) provides that police officers can be removed only for "reasonable or just cause," they are deemed to have a protected property interest in continued employment. The first element is therefore satisfied.

The Supreme Court has held that a public employee with a protected property interest in continued employment is entitled to certain procedural due process protections both before and after termination. *Loudermill*, 470 U.S. at 542, 547-48. The parties have filed cross-motions for summary judgment on the question of whether the process provided by the Village in connection with Gibson's termination was constitutionally adequate.

### 1. Pre-termination

Prior to being terminated, an employee with a protected property interest in continued employment is entitled to notice and an opportunity to be heard. At a minimum, the employee must be given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546.

These requirements were easily satisfied here. Prior to the predisciplinary conferences held on February 20, 2014, and February 24, 2014, Gibson received notice of the charges against him, and summaries of the facts upon which those charges were based. Doc. #19-3, PageID#411-13. He was informed of his right to appear at the conferences, with a chosen representative, to present statements or explanations for his actions. Gibson did, in fact, appear at both conferences and responded to Mr. Esposito's questions concerning all charges. In addition, at the first conference, Gibson provided written responses to each allegation. Doc. #16-1, PageID##95-96; Doc #16-2, PageID#180.

Gibson complains that he was not allowed to speak freely or confront witnesses against him, and was not presented with any specific documentary evidence to which he could respond. However, none of these protections are constitutionally required at a pre-termination hearing. *See Loudermill*, 470 U.S. at 545-46 (holding that a full evidentiary hearing is not required at the pre-termination stage).

Gibson also complains that Mayor Kimball, the ultimate decision-maker, was not present at the pre-disciplinary conferences. Gibson has cited no authority, however, indicating that Mayor Kimball could not rely on the recommendations of Mr. Esposito, the human resources consultant. As noted in *Loudermill*, courts must balance the private interest of the employee in retaining employment against the governmental interest in the "expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Id.* at 542–43.

On a related note, Gibson has also filed a Motion for Sanctions Re: Spoliation of Evidence, Doc. #20. He argues that because the Village allowed the destruction of videotapes of the two predisciplinary hearings, the Court must resolve in his favor any disputes concerning his responses to Mr. Esposito's questions, and draw appropriate inferences concerning the incomplete or cursory nature of those proceedings.

The Court OVERRULES Gibson's Motion for Sanctions, Doc. #20, AS MOOT. Based on the evidence presented, no reasonable jury could find that the

pre-termination procedures afforded to Gibson were constitutionally inadequate. It is undisputed that he had notice of the charges and the facts on which they were based, and was given the opportunity to respond verbally and in writing. The alleged inaccuracies contained in Esposito's report to the Mayor are irrelevant to the question of whether the Village's pre-termination due process protections were constitutionally sufficient.

### 2. Post-termination

Employees with a protected property interest in continued employment are also entitled to certain post-termination due process protections. In Ohio, most public employees are statutorily entitled to a full administrative hearing and judicial review. In *Loudermill*, the Supreme Court concluded that "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by [Ohio Revised Code §124.34]." 470 U.S. at 547-48. Section 124.34, governing suspension and termination of Ohio's classified civil service employees, provides for a full administrative hearing and judicial review.

In a similar manner, Ohio Revised Code § 737.19(B) governs the procedures to be followed in connection with the suspension and termination of village police officers. If a police officer is suspended, the police chief must immediately certify this fact in writing to the mayor, and serve a copy of the charges on the officer. The mayor has five days to investigate and render a judgment. If the charges are sustained, the mayor may suspend the officer, reduce the officer's rank, or

terminate the officer's employment. Within five days from the date of the mayor's judgment, the officer may appeal to the legislative authority of the village. The legislative authority must hear the appeal at its next regularly scheduled meeting. At that meeting, the officer has the right to appear with counsel, examine all witnesses, and answer all charges. The legislative authority then decides whether to dismiss the charges, uphold the mayor's judgment or modify it. The officer may then appeal the decision to the court of common pleas. *See* Ohio Revised Code § 737.19(B).

The post-termination appeals process provided by § 737.19(B) has been deemed constitutionally sufficient, when coupled with the pretermination opportunity to respond. *See Gross v. Vill. of Minerva Park Vill. Council*, 997 F. Supp. 2d 813, 824 (S.D. Ohio 2014).

The procedures set forth in §737.19(B) are also fully spelled out in Section 8.02 of the Village's Personnel Policy and Procedure Manual, entitled "Progressive Discipline." Doc. #23-1, PageID##543-44. Gibson testified that, although he did not personally have a copy of that manual, one was available in the building where he worked. Doc. #16-1, PageID##145-47.

There is no question that the Village followed these procedures when it terminated Gibson's employment. On February 25, 2014, following the predisciplinary hearings, Chief Alexander informed Gibson that he was recommending that he be terminated for insubordination, gross neglect of duty, incompetence, failure to obey direct orders, falsification of records, and violation of

Village policies. Mayor Kimball was copied on this letter. Doc. #16-2, PageID#228. The following day, Wednesday, February 26, 2014, Mayor Kimball sustained the charges and terminated Gibson's employment. *Id.* at PageID#229.

Under Ohio Revised Code § 737.19(B), and § 8.02 of the employee manual, Gibson had five days—until March 3, 2014—to appeal the mayor's judgment to the legislative authority of the Village. Because he did not do so within the time allotted, the Village Council denied his appeal as untimely.

In *Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004), the court held that "[t]he law is well-established that it is the *opportunity* for a post-deprivation hearing before a neutral decisionmaker that is required for due process." *Id.* at 596 (emphasis in original). The Village argues that, because Gibson had the opportunity to appeal the Mayor's judgment to the Village Council, and failed to do so in a timely manner, his procedural due process claim must fail. *See also Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 623-24 (6th Cir. 2013) (holding that due process is satisfied if post-termination procedures are made available); *Gunasekera v. Irwin*, 678 F. Supp. 2d 653, 659 (S.D. Ohio 2010) (same); *Moss v. Bierl*, 134 F. App'x 806 (6th Cir. 2005) (affirming summary judgment in favor of defendants where plaintiff failed to file timely written protest as required under Michigan law).

Gibson concedes that he failed to appeal Mayor Kimball's February 26, 2014, judgment to the Village Council within five days as required by Ohio Revised Code § 737.19(B), and by § 8.02 of the Village's Personnel Policy and Procedure Manual. He blames this, however, on April Huggins-Davis, the Village

Administrator. Gibson claims that she intentionally led him down the wrong path by directing him to the Village's Grievance Procedure, as set forth in Section 8.04 of the Personnel Policy and Procedure Manual, instead of the Progressive Discipline policy as set forth in Section 8.02. He testified at his deposition that he "went with what the village told me I had to do." Doc. #16-1, PageID#129.

There is no evidence in the record to support Gibson's accusation. Gibson testified that he went in person to Huggins-Davis's office and asked for a "grievance form." *Id.* at PageID#128. Nothing in the record indicates that he told her why he wanted it. Gibson's affidavit simply states that, on February 20, 2014, Huggins-Davis sent him a letter and the grievance form. Doc. #19-3, PageID#409. The letter stated:

> In response to the letter received on February 20, 2014 I have enclosed VOM Policy and Procedure Manual Policy Section 8.04 Grievance Procedure and Section 9.05 Grievance form. In order to file a formal complaint against Officers and other Village employees this policy and form must be initiated by you prior to scheduling a hearing with Mayor Kimball, Human Resources, and Council. Please note the deadlines outlined in this procedure.

Doc. #19-3, PageID#419.

Because the letter that Huggins-Davis allegedly received from Gibson is not part of the record, it is not clear whether he told her why he was requesting information on the grievance process. As Defendants note, at the time Gibson requested this information, Chief Alexander had not yet recommended his termination. Based on these facts, it cannot be said that Huggins-Davis

17

intentionally led Gibson down the wrong path by giving him a grievance form instead of a copy of the Progressive Discipline policy.

In challenging his termination, Gibson fully complied with the grievance procedures as set forth in Section 8.04 of the employee manual. Those procedures require the grievance to be submitted to the employee's immediate supervisor "within five (5) working days from the date of the incident giving rise to the grievance." Doc. #16-2, PageID#230. Gibson submitted the grievance to Chief Alexander, his immediate supervisor, on March 3, 2014, within five days of his termination. The Chief denied it the same day.

Gibson was then required to appeal the grievance to the Mayor "within five (5) working days of the supervisor's response." *Id.* at PageID#231. According to the manual, the Mayor "will schedule a hearing with the employee within a reasonable time of receiving the grievance and will issue a decision within a reasonable time following the hearing." Doc. #23-1, PageID#552. Instead of scheduling a hearing, however, Mayor Kimball summarily denied the grievance on March 3, 2014.

The grievance form contains the following statement:

Police Employees Only:

In cases involving layoff, suspension of three (3) days or more, demotion, reduction, or termination, the employee has five (5) working days following the [] Mayor's response . . . to appeal the grievance to the Council by presenting said grievance to the Council Secretary or his/her designee.

Doc. #16-2, PageID#231.

It is undisputed that Gibson presented the grievance to the Village Council on March 7, 2014, within five days of the date Mayor Kimball denied the grievance. Gibson maintains that, regardless of whether he timely appealed Mayor Kimball's February 26, 2014, termination decision pursuant to Ohio Revised Code §737.19(B), his full compliance with the Village's grievance procedure obligated the Village Council to provide an evidentiary hearing.

Gibson further argues that Ohio Revised Code § 737.19(B) must be read in conjunction with the Village's grievance procedures. He suggests that, in order to challenge his termination, he was required to exhaust the Village's grievance procedures. He further suggests that those grievance procedures required the Mayor to make a "second and final" decision to discharge him. Under Gibson's theory, as long as he appealed his termination to the Village Council within five days from the date the Mayor denied his grievance, he was entitled to a full evidentiary hearing.

The Court disagrees. Nothing in the Ohio statute or the employee manual suggests that an employee must exhaust internal grievance procedures prior to appealing a termination decision to the Village Council pursuant to Ohio Revised Code § 737.19(B).

The Court sympathizes with the fact that Gibson mistakenly believed that he was required to file a grievance and then follow the steps set forth in § 8.04 of the employee manual. Notably, this misconception might have been avoided had Mayor Kimball's February 26, 2014, termination letter instructed Gibson how to

19

appeal the decision. No doubt adding to Gibson's confusion is the statement, on the grievance form itself, indicating that, in cases involving termination, "the employee has five (5) working days following the [] Mayor's response . . . to appeal the grievance to the Council by presenting said grievance to the Council Secretary or his/her designee." Doc. #16-2, PageID#231. This lends credence to Gibson's belief that the grievance process was the appropriate way to challenge his discharge, and that he had five days after the Mayor ruled on the grievance to appeal the decision to the Village Council.

Nevertheless, § 1.04 of the employee manual provides that, "[i]n the event of a conflict between this manual and any applicable law, the law shall prevail." Doc. #23-1, PageID#526. The proper procedures for a village police officer to appeal his termination were set forth in Ohio Revised Code § 737.19(B), and in § 8.02 of the employee manual.

Under these circumstances, Gibson's full compliance with the grievance procedure does not render the Village's refusal to hold a post-termination evidentiary hearing unconstitutional. The post-termination procedures that were available to him under Ohio Revised Code § 737.19(B), coupled with the pre-termination notice of the charges against him and the opportunity to respond, satisfy all necessary due process requirements. *See Gross*, 997 F. Supp. 2d at 824; *Loudermill*, 470 U.S. at 547-48. Notably, by the time Gibson submitted his grievance to the Village Council on March 7, 2014, his termination was already final, given that he had failed to timely appeal Mayor Kimball's February 26, 2014,

judgment. At that point, an evidentiary hearing would have served no useful purpose.

Accordingly, the Court OVERRULES Plaintiff's Motion for Partial Summary Judgment, Doc. #19, and SUSTAINS Defendants' Motion for Summary Judgment, Doc. #21, on Count III of the Complaint.

### D.    Disability Discrimination Claims

#### 1.    ADA and Rehabilitation Act Claims (Count I)

Count I of Gibson's Complaint asserts violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, and/or the Rehabilitation Act of 1973, 29 U.S.C. §794. Gibson alleges that the Village discriminated against him because of his diabetes, refused to reasonably accommodate his condition, and retaliated against him.

Gibson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 30, 2014. Doc. #1, PageID#4. On August 31, 2015, the EEOC issued a right-to-sue letter, notifying him that, if he wished to file suit, he must do so within 90 days of receipt of the notice. Doc. #16-2, PageID#255. Gibson testified that he assumed that he received a copy of this letter, but did not specifically recall doing so. Doc. #16-1, PageID#151. The Complaint alleges that his *attorney* obtained a copy of the right-to-sue letter on November 22, 2015. Doc. #1, PageID#4. Gibson filed suit on February 12, 2016.

Defendants argue that Gibson's federal claims are time-barred because they were not filed within 90 days of his receipt of the right-to-sue letter, and he has

21

shown no reason why the statute of limitations should be equitably tolled. *See Truitt v. Cty. of Wayne*, 148 F.3d 644, 646–47 (6th Cir. 1998) ("[T]he ninety-day filing requirement . . . is not a jurisdictional requirement but, instead, is a timing requirement similar to a statute of limitations, subject to waiver, estoppel and equitable tolling.").

The Court agrees that, because Gibson's ADA and Rehabilitation Act claims were not timely filed, and Gibson has failed to offer any reason why the statute of limitations should be equitably tolled, Defendants are entitled to summary judgment on these claims. *See Hupka v. U.S. Dep't of Defense*, 134 F. Supp. 2d 871, 878 (E.D. Mich. 2001) (noting that Rehabilitation Act claims, like Title VII claims, must be filed within 90 days of receipt of a right-to-sue letter); *Lock v. FedEx Corp. Servs., Inc.*, No. 15-cv-2647, 2015 WL 7018398, at *3 (W.D. Tenn. Nov. 12, 2015) (holding that ADA claim was time-barred if not filed within 90 days of receipt of right-to-sue letter); *McGhee v. Disney Store*, 53 F. App'x 751, 752-53 (6th Cir. 2002) (affirming dismissal of ADA claims as time-barred where suit was not filed within 90 days after receipt of right-to-sue letter, and equitable tolling did not apply).

### 2. Ohio Revised Code § 4112.02 Claim (Count II)

Even though Gibson's federal disability discrimination claims are time-barred by his failure to file suit within 90 days after receiving the right-to-sue letter, this does not necessarily mean that his claim of disability discrimination under Ohio

Revised Code Chapter 4112, as set forth in Count II of the Complaint, is also time-barred.

Discrimination claims under Ohio Revised Code Chapter 4112 are subject to a six-year statute of limitations. *See* Ohio Rev. Code § 2305.07; *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.* (1994), 70 Ohio St. 3d 281, 638 N.E.2d 991, syllabus. Moreover, an individual may file a discrimination claim under Ohio Revised Code Chapter 4112 regardless of whether he or she has exhausted administrative remedies. *See Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 869 (N.D. Ohio 2013); *Franko v. City of Cleveland*, 654 F. Supp. 2d 711, 715–16 (N.D. Ohio 2009) (dismissing Title VII claim for failure to exhaust administrative remedies but declining to dismiss claims brought under § 4112.02).

Nevertheless, because the Court has dismissed all of Gibson's federal claims, the Court declines to exercise supplemental jurisdiction over Gibson's state law disability discrimination claim. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that if federal claims are dismissed before trial, the state claims should be dismissed as well); 28 U.S.C. §1367(c)(3) (providing that district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction). Count II of Gibson's Complaint is therefore DISMISSED WITHOUT PREJUDICE.

## III.  Defendants' Motion in Limine (Doc. #26)

Given that the Court has dismissed all claims, Defendants Mechanicsburg Police Department's and Village of Mechanicsburg's Motion in Limine, Doc. #26, is OVERRULED AS MOOT.

## IV.  Conclusion

For the reasons set forth above, the Court:

- OVERRULES Plaintiff Michael Gibson's Motion for Partial Summary Judgment on His Claim that Defendant Failed to Give Him Due Process (Doc. #19);

- SUSTAINS Motion for Summary Judgment as to All Claims Against Defendants Mechanicsburg Police Department and Village of Mechanicsburg (Doc. #21).  Counts I and III are DISMISSED WITH PREJUDICE.  Count II, the claim of disability discrimination brought under Ohio law, is DISMISSED WITHOUT PREJUDICE to refiling in a state court of competent jurisdiction;

- OVERRULES AS MOOT Plaintiff Michael Gibson's Motion for Sanctions Re: Spoliation of Evidence (Doc. #20); and

- OVERRULES AS MOOT Defendants Mechanicsburg Police Department's and Village of Mechanicsburg's Motion in Limine (Doc. #26).

Judgment shall be entered in favor of Defendants and against Plaintiff.

The above-captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: June 2, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE